Mr. Krier, when you're ready. I am, Your Honor. May it please the Court, Robert Krier for the appellant, First Kuwaiti. First Kuwaiti spent tens of millions of dollars supporting the U.S. war effort in Iraq. KBR refused to pay it after the government declined to reimburse KBR's own request for reimbursement. The arbitral tribunal ruled for KBR, despite unambiguous contract language, that required KBR to provide prompt notice of the decision to First Kuwaiti and to allow First Kuwaiti to participate in the appeal. Your Honors, we have strong arguments that that was a manifest disregard of the law, but the district court never reached them, because it concluded that First Kuwaiti had filed its motion to vacate too late. This court should reverse that threshold decision. The Federal Arbitration Act's three-month deadline starts to run from the date of delivery of the award, but it does not expressly address how that language applies in a situation like this, where a tribunal first issues an original award, but then later on issues an amended award or another order that modifies or supplements the first award. But didn't the second order simply clarify the first award? No, it did multiple things, Your Honor. It did clarify aspects of the order. It also supplemented the order, the original award. It added 24 pages of new analysis on the Section 3.3 claim that was nowhere in the original order, but is directly relevant to the issues on the motion to vacate. So this was not just a ministerial adjustment. This was a substantial supplementation in addition to the original award. We think the most important analogies here are, number one, Federal Rule of Appellate Procedure 4, because in the context of district court judgments, it's well settled that if a district court issues a judgment, but then later issues another order amending the judgment, the time to appeal runs from that second order, not from the first one. Now, that's explicit today in Federal Rule 4, but even before the rule was amended to make that explicit, that's the approach courts followed. And the Advisory Committee recognized that when it wrote that into the rule. It said it was just making clear the approach that federal courts already followed. And it's no surprise that courts follow that approach because it just makes obvious common sense. Before you take a case up on appeal, you want the district court's final word. A court of appeals has no interest in getting involved in a case while the district court is still mauling over a motion to amend the judgment that could inform this court's review. But this wasn't a motion to amend, right? Article 30 doesn't allow for that. Article 30 allows three types of relief. It allows motions to clarify, motions to fix computational orders, or motions to address claims that were not addressed in the original award. And so here, the motions that were filed by both parties triggered two of those three boxes. KBR asked to amend the award to specify currency issues, to specify how different parts of the award offset each other, and the tribunal granted that in part. And then first, Kuwaiti filed an application, which definitely, in part, asked the court to supplement the award to address an issue the tribunal had not addressed in its original award, and that was the Section 3.3 claim. That was the issue that the tribunal then devoted 24 pages to addressing with a brand-new analysis that wasn't in the original award. Why would a court want to get involved without the benefit of that additional thinking from the tribunal? What the tribunal said in that Article 30 order was directly relevant to the manifest disregard claim that First Kuwaiti was proceeding. So it's just like a district court judgment. If a district court issues a judgment but then takes under advisement a motion to amend, supplement, clarify, do anything else with that judgment, federal law is clear that the appeals court should stay its hand until the district court's done with this case. And the exact same reasoning applies to this case. I understand the analogy you're making, but what's disconcerting to me is that arbitration awards are supposed to be final and binding, and there are very limited reasons for filing these Article 30 filings. And under your argument, if a party simply files and includes essentially an appeal within an Article 30 filing, then the time for filing the appeal could extend essentially without limit. On the contrary, Your Honor. And in fact, the panel here said that there was abuse of the Article 30 application process in the decision. Two points there, Your Honor. First of all, this is not going to result in a significant lengthening of the arbitration process. Most forums that have these rules that permit post-application, post-award applications to the tribunal set very short deadlines. So here it has to be filed in 30 days. It's supposed to be disposed of in 30 days. In the context of an arbitration that lasted 15 years, that's nothing. But whatever incremental lengthening of the time of the arbitration that results from that process is one the parties contemplated. If the parties really want the most expeditious arbitration possible, they can just choose a forum that doesn't allow those applications. But when certain forums, like the ICDR, have allowed for post-award applications to the tribunal, whatever little incremental length of time before the tribunal that results in is something the parties bargain for. And at the end of the day, arbitration is about parties' consent. And so if parties have consented to that additional tiny step in the process, the federal courts should interpret the FAA to accommodate that process, to say that the final award is reached when the tribunal is actually done with the case and not to get involved in the case in court while the arbitration is still ongoing. I mentioned Rule 4. The other close analogy here is the New York statute. Now, it is not the same statute, but it presents the exact same ambiguity because it, too, starts the clock running when the award is delivered. And New York courts, time after time, the Second Circuit Court of Appeals, as well, has interpreted that language to mean that if the tribunal issues an award, but then later issues another decision that amends or modifies or supplements or even denies a request to do any of those things to the award, the time to seek judicial review starts to run from that second decision, not from the original, superseded award. Now, KBR argues that this court should just ignore all those New York precedents because of a difference between New York and federal law. In New York law, the state statute itself provides for post-application, post-award applications to the tribunal, whereas the federal statute doesn't address that issue one way or another, so it just picks up whatever the arbitral forum's rules are on post-award applications to the tribunal. But that is a distinction without a difference because the question here is not whether a party can file a post-award application to the tribunal or the source of the party's authority to do so, but when the clock starts to run. And on that issue, New York and federal law are exactly on point. Both statutes say that the time to seek review starts to run from delivery of the award, but they don't explain how you apply that language, where there's multiple decisions from the tribunal, an original award and then a subsequent decision that clarifies, amends, or supplements the award like the tribunal did in this case. Why would we as a federal circuit rely on New York cases that aren't applicable versus federal case law that is applicable? For example, the Seventh Circuit has said that the FAA's policy is expeditious dispute resolution would be severely undermined if the limitations period prescribed in the FAA Section 12 were told every time a losing party filed the functional equivalent of a motion for reconsideration. And that's a universal sort of holding by the federal courts, and we are a federal court. Why should we give credence to your New York cases? Respectfully, Your Honor, I think you are vastly overstating the amount of federal support on this issue. By my count, they have two decisions from federal courts. What is your strongest federal authority? The Second Circuit case, which is interpreting the New York statute, Your Honor. The one that you just mentioned. Precisely, Your Honor. And then we would rely on the federal rule of four analogy in the New York State cases. If there was an equally numerous body of federal law going the other way, I take Your Honor's point. The cases that interpret the exact same statute are maybe entitled to more weight than cases that interpret the statute with the same language. Here, though, Your Honor, the federal authority addressing this issue, even in KDR's favor, is extremely thin. Doesn't the New York statute contain alternative provisions that don't precisely map onto the federal arbitration? No, Your Honor. This is the point I addressed before. New York does have a – the statute has a provision that says that you can file a post-award application with the tribunal. Federal law just picks up whatever the arbitration firm's rules is. But that's the difference. That doesn't matter, Your Honor, because – And what was the name of your Second Circuit case again? The Harry Hoffman printing case. I'm sorry, what? Harry Hoffman printing. All right. That's at – I see. Yeah, 912F2nd608. But it is interpreting New York law, Your Honor. You know, the cases that go their way, here's what they have. There's the Fridella case from the First Circuit, which addresses this issue in a lengthy footnote. There's the Seventh Circuit case Your Honor mentioned. But that actually supports us, and you know why? Because the Olson v. Wexford, which is the Seventh Circuit case that addresses this, what it says is you should look to Rule 4 by analogy. And so in that case, they said, well, under Rule 4, if you file a Rule 60B motion more than 28 days after the judgment, that doesn't extend the time to appeal. But by the same logic, Your Honor, in a case like this, when you file the application within the time to seek reconsideration from the First Instance Tribunal, it does extend the time to seek review. So to the extent the Seventh Circuit is saying apply Rule 4 by analogy, that supports us. It doesn't support them. And that's it. Those are the only two cases they have from the federal courts of appeals that even arguably go their way. The other ones they cite are a mix of cases where people wait like five months after the second decision. You know, obviously that's untimely. There are cases that don't involve motions for reconsideration at all. There's one that involved a judgment that had been removed to federal court. It's completely irrelevant context. They have one that involved the Pennsylvania statute of limitations. So please do not be misled into thinking that they have some sort of extensive body of federal case law here. They just don't. There's not a lot of federal case law on this issue. There is solid and numerous and federally endorsed case law coming out of New York. There is the federal Rule 4 analogy, which I think is very strong. And finally, there are just overwhelming practical considerations. If this is an open issue, and it is, Your Honor can take due consideration for the practical implications of its decision. So what about the practical need for finality? And that's governed by the arbitral forum's rules. So if an arbitral forum itself says, once there's an award, you get this very brief 30-day period to submit certain types of applications to the tribunal, and then the tribunal will promptly resolve those, whatever that adds to finality is something that's built into the forum's rules. So if the parties agreed to arbitrate in a forum that allows that slight modification, that brief modification of finality, that's what the parties agreed to. And there is no federal interest in making arbitral awards more final than they are under the arbitral forum's own rules. That thwarts the party's intent. That tells parties that notwithstanding that you signed up for a forum that follows this rule, you have to follow some different rule instead. And there is no federal policy that advances that. Your Honor, I'll reserve the rest of my time for rebuttal. Thank you, Mr. Craig. May it please the Court, Douglas Patton for Kellogg, Brown, and Root. I'd like to address some of the questions the panel asked my colleague about. The analogy that the federal rules is applicable to this type of issue has been rejected by two federal circuits, Fradella from the First Circuit and Olson from the Seventh Circuit. And basically the appellant is asking you to create a split in the Court of Appeals by ruling contrary to what they did. And we don't believe that would be proper. But I understood him to say that the Second Circuit also supports his position in this Harry Hoffman printing case. I don't think you included any analysis of that case in your briefing. Right. Hoffman interpreted New York law. If you want a Second Circuit case interpreting the application of the Federal Arbitration Act, you look at Florissant. There, Florissant was interpreting federal law and said there were no exceptions to the three-month period. And what they're basically asking you to do is not only create a split in the circuits, but create an exception to the three-month rule that Congress has never decided to do. So they're asking you to create a judicial exception that Congress has failed to add to the statute after 100 years. Now, whether or not it's fair or unfair, the Olson court, well, first of all, this court said in Long John Silver that it cannot second-guess the interpretation of an arbitrator's own rules. They're asking you to second-guess the panel's decision that the motion they made was improper. They want to extend the time for filing their motion to compel by filing an improper motion under the ICDR rules. The district court noted that in its decision. So basically, they're asking you to create a federal circuit split, create an exception to a statute that Congress decided not to create, and ignore what the panel said was an improper motion. And we're going to reward litigants filing improper motions to create an exception that doesn't exist under federal circuit law or the language of the statute. Are there any circumstances where an ICDR panel's response to an Article 30 application might extend the statute of limitations? I can see a circumstance, for example, where they inserted an error in the new opinion, a sizable error. Wouldn't then there need to be an extension of the statute of limitations under those circumstances? Isn't this not a per se rule, but it's really based on the facts of this case? I believe there potentially could be, but what the question is, is did that subsequent decision change the final award that had been issued? And the district court noted at page 1152 in the joint appendix that tribunal's decision did not substantively change any aspect of the final award. It was no more than a straightforward math computation on already determined amounts. So you're not really asking for a per se rule regarding Article 30 applications. You're asking us to look at what happened here and the changes that were made or not made in the subsequent ruling. Well, actually we are. I think this court should impose the strict three-month rule that Fradella in the First Circuit and Olsen in the Seventh Circuit did. If a party wants to protect itself by filing a motion for reconsideration, it could easily file a protective motion to compel within the three months. And the Olsen court noted that a party who is uncertain about the finality of an award should err on the side of compliance, which is not onerous. In fact, if you look at page 1078 of the appendix, there the district court in oral argument asked First Kuwaiti's counsel the following question. Let me ask you this. Is there anything that would have prevented a party in your client's position from in fact filing within the three months of the final award labeled as such and then still go before the arbitrator under Article 30 after the appeal is taken? Answer. Your Honor, I don't think our position is that it would have been possible to do that. So we are asking you to strictly enforce the three-month rule, and there's nothing that prevents a party from still filing an Article 30 application if they want to do so. But they need to do it to file their motion to vacate within three months. Can you address the prejudgment interest issue? Yes. There are two issues for you to decide. Hopefully you'll only look at the first one, which is did the panel address interest? And if the panel did address interest, then this court's decision, in factly oncology says you're done. Once the panel addresses the interest question, we're not going to review the substance of that interest question. And in this particular case, the record is full of evidence that the final award addressed interest. If you look at JA132, the tribunal noted in particular its decisions respecting interest on the party's stipulations. It went on to say, refer to its prior decisions, including Procedural Order 13. And those prior decisions are set forth at JA617-21. In its final decision, final award, JA134, it went on to grant KBR the right to offset the monies included in the stipulations. In fact, if you look at the briefing that First Quadey did below at JA1447, it states the tribunal panel believed erroneously that it previously decided the issue. Now, once a tribunal decides an issue, this court's review is extremely limited, and it should defer to that. And that's Berkeley Oncology. A federal court cannot invade the province of the arbitrators. So that's the threshold issue. If you get beyond the threshold issue, did the trial court abuse its discretion in denying interest on the stipulations? If you read the district court's opinion, it goes and cites the same record that we just cited in following the logic of the panel in denying the interest. And if you look at the Ninth Circuit Cubic case, the Ninth Circuit Cubic case says in exercising its discretion, the district court should address interest that's consistent with the award. And that's exactly what the district court did here. It addressed interest as the final award did and as the panel did. And therefore, even if you decide to move forward and address the discretion of the district court, that the discretion was properly exercised here. There's one issue I'd like to address, which is the confirmation of the award by the district court below. This court's decision in Corvus is on all fours with ours. It relied on three key facts. The first fact was that the arbitration agreement made the awards final. We have even better facts. Our arbitration agreement uses the words binding. Corvus cited the language binding. Our arbitration agreement cites final and binding. Corvus relies upon the fact that the arbitration rules, in addition to the agreement, also made the decision binding. And our ICDR rules makes the decisions final and binding. Finally, the Corvus court said, look at the conduct of the parties. Did the parties believe that a final award was intended to be enforced in court? And there, the parties utilized federal court procedures. And here, First Kuwaiti went into federal court and said, we want where we won affirmed. So it utilized the very procedures it now says were not intended to be enforced in court. Basically, they're asking you to overrule Corvus. They don't say it that way, but effectively, that's what you would have to do to agree with their position that Corvus doesn't apply in the facts of this case. If you have no further questions, I'm happy to end early. But I'm happy to address anything else you have. Thank you, Mr. Patton. Thank you. Mr. Crow, you have some time. Thank you, Your Honor. The opposing counsel mentioned the Florissant case, which says there shouldn't be any exceptions to the three-month rule. And I want to be clear, we are not asking for an exception to the three-month rule. Even if there are no exceptions to that rule at all, you still need to decide when that three-month period starts to run. That's the issue in this case. Does it run from the old superseded award, or does it run from the arbitrator's actual final decision that added 24 pages of new analysis? So Florissant is just completely irrelevant. The opposing counsel persisted in trying to claim support from the Seventh Circuit's Olson case. So I have it here, and I'll just read. This is from page 492 and 397, F3rd. The Seventh Circuit says in addressing this issue, The best analogy is to a motion in federal court under Rule 60B. The filing of a Rule 60B motion to reconsider outside the 10-day window, which is now a 28-day window, after the judgment does not toll the time for filing an appeal, Federal Rule of Appellate Procedure 4A4A. We see no reason why the same reasoning should not apply in the arbitration context. That supports us. If you look to the Federal Rule 4 analogy, we are timely, because a timely motion to reconsider to the tribunal means that the time to seek judicial review in court doesn't start to run until the tribunal's done with the case. So that really leaves them with only one other case that they cited while they were up here, and that was this First Circuit Fred Dalla decision, which, yes, has a very lengthy footnote addressing this issue. And I completely agree, Your Honors, you shouldn't run around creating circuit splits willy-nilly, but it's also important to get this issue right. A lot of participants in arbitral proceedings are going to be denied the opportunity for review in court by an arbitrary rule that says you have to run off the court preemptively while the arbitrators are still considering the case and seek judicial review before the tribunal's done. That's a rule that's not compelled or even supported by the text of the statute, and it's one that creates completely perverse incentives, duplicative work for parties, and wastes the court time when the tribunal itself is perfectly capable of fixing its own problems. So the rule they're advocating doesn't make sense. It's contrary to Rule 4. It's contrary to Terry Hoffman, which, yes, addressed New York law, but it's the exact same issue. And it's contrary to everything else in our brief, and so I don't think that a desire to avoid a conflict with one footnote in another circuit's decision is an adequate reason to reach the wrong result in this case. Judge Berner, you raised the question of whether this should be a case-by-case determination where we look at whether the particular changes that the tribunal made in its second decision are substantial enough that they should restart the clock, and we would urge against that for a couple reasons. First of all, even if that should be the standard, it was met here, because what the tribunal did here was very substantial. A critical issue in this case was the Section 3.3 issue. That's the provision that said that KBR had to allow us to participate in the appeal, and the tribunal just completely forgot to address that issue in its original award. And so we pointed that out, and then the tribunal came back and said, oh, well, here's 24 pages of new analysis on this theory that the tribunal just came up with by itself as to why that section doesn't apply. So if we go to court on a motion to vacate, one of the grounds under the motion to vacate, under the FAA, is the tribunal's failure to reach a complete determination of the issues before it. And so we would have argued that that standard was met here because the tribunal didn't address Section 3.3. The fact that it added 24 new pages of analysis is, of course that's relevant to that issue. Why would the court not want to know what the tribunal itself thought of the issue that we were complaining it had overlooked? So this was a very substantial supplementation, and it amended the award in a way that was directly relevant to claims that we were going to pursue on the motion to vacate, and we know that. So that seems to suggest that you agree that it's a case-by-case determination, not a per se rule. No, Your Honor. That's my first argument. My second argument is you shouldn't go there, and the argument I just made illustrates why not. Because the Supreme Court said again and again that statute of limitations should be clear rules. It is not a desirable rule to say that you get the benefit of the later award only if it passes some threshold of substantiality. Because what are parties supposed to do? I mean, how do they even know before the tribunal issues that second decision whether it's going to be substantial enough? It puts parties in a very difficult situation, and it puts courts in very difficult situations, because then they have to decide how substantial was this change in the second award. It doesn't make sense. And this, actually, several of the New York cases consider this alternative and say we're just not going to go down that road. Statute of limitations should be clear. This is a very clear rule we're advocating for. If the tribunal's rules authorize you to file post-award applications and you properly file an application like that, which ours did to the extent we were seeking supplementation of the award, then the time to seek judicial review runs from the second decision, not the first decision. And so that's not a significant incursion on arbitral finality or arbitral expedition. You know, we're talking a couple months under most arbitral forms rules. And if the parties signed up for it, then the overriding federal policy of giving the parties what they asked for in arbitration says that a court should not insert itself into the process while the arbitrators still have the case under consideration. Very briefly, on pre-judgment interest, I direct your honors to page 620 of the appendix where the tribunal said, the tribunal is of the view that any claims for pre- or post-judgment interest on amounts stipulated between the parties are premature at this stage. The tribunal did not deny pre-judgment interest. It kicked the can down the road and then never actually wound up addressing it. So in that circumstance, the district court does have authority and presumptively should award pre-judgment interest. It abused that discretion here because its major justification for not awarding pre-judgment interest was the mere fact that the stipulations didn't provide for it. And that's not a proper consideration. Finally, on the confirmation point, Corvus is completely different from this case. In Corvus, the agreement incorporated arbitral rules that expressly referred to judicial confirmation. It said when the award was considered final for purposes of judicial confirmation proceedings. And not only that, the incorporated rules said that those proceedings would be conducted under the Federal Arbitration Act. So the agreement in Corvus very explicitly incorporated rules that said there could be judicial confirmation proceedings under this statute. There's nothing similar to that here. On that issue, there actually is a circuit split. We have the Eighth and the Tenth Circuits going our way. There's a few other circuits going the other way. Corvus does not address the issue here, which is whether the final and binding, may I conclude my answer here? Corvus does not address the issue here, which is whether the final and binding language in the contract alone is sufficient. But different circuits have gone different ways on that issue. And we would commend to your honors the Eighth and the Tenth Circuits' view on that issue, which we think is the better reasoned one. If your honors have no further questions, we would ask the Court to reverse. Thank you, Mr. Criott. And thank you, Mr. Patton. I'm going to ask the clerk to adjourn the Court, sign and die, and then we'll come down and greet counsel. The honorable Court stands adjourned, sign and die. God save the United States and this honorable Court.
judges: Roger L. Gregory, Stephanie D. Thacker, Nicole G. Berner